**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL TREASURY EMPLOYEES UNION<br>800 K Street N.W., Suite 1000<br>Washington, D.C. 20001<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE<br>U.S. DEPARTMENT OF TREASURY<br>1111 Constitution Avenue N.W.<br>Washington, D.C. 20224, and<br><br>FRANK BISIGNANO,<br>Chief Executive Officer,<br>Internal Revenue Service<br>U.S. Department of Treasury<br>1111 Constitution Ave. N.W.<br>Washington, D.C. 20224,<br><br>Defendants. | ) | Case No. 26-2938<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1. Plaintiff National Treasury Employees Union (NTEU) is a labor union that represents employees in thirty-eight federal agencies and departments, including the Internal Revenue Service (IRS). NTEU negotiates collective bargaining agreements with agency employers, pushes for legislation that improves the working lives of federal employees, and engages in general advocacy for federal employees' rights.

2. The Constitution's Appointments Clause requires that the President nominate and that the Senate confirm principal officers, such as the IRS Commissioner.

3. The Supreme Court has explained that the Appointments Clause requires Senate confirmation of the President's choice of nominees for principal officer positions "to curb executive abuses of the appointment power," to encourage "judicious" selection of officers, and to "ensure public accountability for both the making of a bad appointment and the rejection of a good one." *Edmond v. United States*, 520 U.S. 651, 659–60 (1997).

4. The constitutional requirement that "Congress create federal offices 'by Law,' [is] an important check against the President—he cannot create offices at his pleasure." *Trump v. United States*, 603 U.S. 593, 643 (2024) (Thomas, J., concurring).

5. Frank Bisignano, in a newly created position of IRS "Chief Executive Officer" (CEO), is carrying out IRS Commissioner duties and acting as the head of the IRS indefinitely. But the President never nominated him for, and the Senate never confirmed him to, his position at the IRS. And the creation of a new agency head position that avoids the nomination and confirmation requirements of the IRS Commissioner position is a circumvention of the Appointments Clause.

6. If this type of circumvention of the Appointments Clause is allowed to stand, there could be an executive branch full of CEOs at the helm of each agency, instead of a Secretary or Commissioner—none of whom would go through the

Constitution's process of presidential nominations and Senate confirmations. That would plainly conflict with what the Framers intended through the Appointments Clause.

7. Mr. Bisignano's actions, therefore, are null and void—including the July 24, 2026, change in the advance leave policy described below.

8. Agencies have statutory authority to advance annual and sick leave to employees in appropriate circumstances. 5 U.S.C. §§ 6302(d) (annual leave), 6307(d) (sick leave).

9. OPM guidance instructs that agencies can advance annual leave "to an employee in an amount not to exceed the amount the employee would accrue within the leave year." OPM, Fact Sheet: Advanced Annual Leave, https://perma.cc/78GY-YGQA (Aug. 6, 2026). The same guidance recommends that the agency "consider such matters as the expectation of return to duty, the need for the employee's services, and the benefits to the agency of retaining the employee." *Id.*

10. An Office of Personnel Management (OPM) regulation, 5 C.F.R. § 630.402, has governed agencies' use of advanced sick leave since 2010. OPM's goals in issuing the regulation included "provid[ing] consistency throughout agencies as to the purposes and limitations of advanced sick leave." 75 Fed. Reg. 75363, 75367 (Dec. 3, 2010).

11. As OPM explained, advanced sick leave is a "flexibility" that agencies can use to help "new employees and employees who have experienced personal hardships." *Id.* at 75368. OPM instructed that "supervisors must use their judgment

in reviewing a request for advanced sick leave" to minimize the chances of employees separating from service with a negative leave balance. *Id.* The regulation limits employees to either 240 or 104 hours of advanced sick leave per year, depending on the reason for the leave request. *See* 5 C.F.R. § 630.402(a).

12. OPM's fact sheet on advanced sick leave—like its corresponding advanced annual leave fact sheet—recommends that agencies "consider such matters as the expectation of return to duty, the need for the employee's services, and the benefits to the agency of retaining the employee." OPM, Fact Sheet: Advanced Sick Leave, https://perma.cc/U35R-UAPF (Aug. 6, 2026).

13. The IRS's Internal Revenue Manual (IRM) provides for advanced annual and sick leave. It instructs supervisors to evaluate each request on a case-by-case basis. It also requires supervisors to grant advanced leave requests related to the birth and care of a child unless there are unusual circumstances involved. The IRM requires separating employees to repay the agency for advanced leave they use but do not accrue before leaving their employment. IRM 6.630.1.6, 6.630.1.6.2, 6.630.1.6.2(7), 6.630.1.6.3 (Aug. 1, 2023), *available at* https://perma.cc/L3AK-64EX; IRM 6.630.5.6(1), 6.630.5.6(5) (Aug. 26, 2025), *available at* https://perma.cc/KBA4-LT7E.

14. On July 24, 2026, the IRS Human Capital Office sent an email from IRS leadership to all IRS employees with the subject line "Indefinite Suspension of Advanced Leave" (the Directive). *See* Exhibit A. The Directive announced an abrupt policy change under which IRS would (1) deny all pending requests for advanced

annual and sick leave and (2) refuse to accept any future requests for advanced leave. *Id.* The Directive stated the new policy would be effective the same day, July 24. *Id.*

15. Mr. Bisignano is the current SSA Commissioner. On July 24, 2026, SSA Chief Human Capital Officer Florence Felix-Lawson sent an identically worded email to all SSA employees conveying the same information and direction as the Directive the IRS sent to its employees that same day. *See* Exhibit B; Jory Heckman, *IRS and Social Security bar employees from taking advanced leave*, Gov't Exec. (July 29, 2026), https://www.govexec.com/workforce/2026/07/irs-social-security-bar-employees-taking-advanced-leave/415065/.

16. Upon information and belief, no other agencies besides IRS and SSA have issued directives categorically barring their employees from using advanced annual or sick leave.

17. The IRS Directive is arbitrary and capricious under the APA because it requires across-the-board denials of all pending advanced leave requests and because it cuts off any future such requests, regardless of an employee's individual circumstances. The Directive is also arbitrary and capricious because it fails to consider important reliance interests; it creates conflicting, irreconcilable agency policies; and it fails to adequately explain the agency's abrupt change in policy.

## JURISDICTION

18. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

19. Venue is proper in the District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(e). NTEU is headquartered in Washington, D.C. So is the IRS, and a substantial part of the events or omissions giving rise to the claim occurred in Washington, D.C.

## PARTIES

20. Plaintiff NTEU is an unincorporated association with its principal place of business at 800 K Street, N.W., Suite 1000, Washington, D.C. 20001. NTEU represents tens of thousands of federal employees in thirty-eight departments and agencies, including at the IRS.

21. NTEU brings this action on behalf of the IRS employees it represents. The IRS's blanket denial of all pending advanced leave requests and complete suspension of the program plainly harms NTEU's members, including those described in this complaint.

22. Defendant IRS is a federal agency headquartered in Washington, D.C. It issued the decision at the center of this complaint.

23. Defendant Frank Bisignano is the IRS CEO. He is carrying out the functions of the IRS Commissioner, which is a principal officer, but the President did not nominate him to that position and the Senate did not confirm him to it. Mr. Bisignano has therefore lacked authority for his official actions, including issuing the Directive.

## STATEMENT OF CLAIMS

### Factual Background

24. The IRS Human Capital Office emailed a Directive, addressed to "All Employees," on July 24, 2026." Exhibit A. The sender appeared as "IRS Leadership." *Id.* The email bore the subject line "Indefinite Suspension of Advanced Leave." *Id.* The body of the email is reproduced below in full:

> To All Employees,
>
> Effective July 24, 2026, and until further notice, IRS is suspending the granting of both advanced annual leave and advanced sick leave, agency wide. This suspension has no impact on employees' use of their earned annual and sick leave.
>
> The American people depend on IRS to deliver on its mission every day. Advanced leave, which is leave granted before it is earned, means employees are compensated for time away from our mission before the work has been done. The cumulative effect over the years of this policy is significant, unsustainable, and impacts our service to the public. In a number of individual cases, advanced leave is unlikely to be earned back due to the large amount of hours. This is debt carried against the future work of all our employees, work that has not yet occurred, and work the public expects us to deliver. This constrains our ability to invest in the people, tools, and resources our mission requires.
>
> As of July 24, 2026, we will no longer accept any requests for advanced annual or sick leave. All pending requests will be denied. Existing advanced leave balances already granted are not affected by this suspension, but all outstanding balances must be repaid, even at separation in most instances. The suspension will remain in effect as we evaluate our efforts to reduce IRS's existing significant advanced leave balances. Employees' earned leave, along with existing programs such as the Voluntary Leave Transfer Program and Family and Medical Leave Act (FMLA), remain appropriate resources for employees to manage their individual circumstances.
>
> Thank you for your continued commitment to the public we service.
>
> IRS Human Capital Office

25. This abrupt policy reversal is harming numerous IRS employees whose advanced leave requests were pending on July 24. The agency has now summarily denied all of those requests pursuant to the Directive.

26. One such employee is NTEU member Jose Flores, who works at the IRS's offices in Fresno, California. Previously, Mr. Flores was required to use several months of unpaid FMLA leave for medically necessary absences from work because his managers would not approve other forms of leave. In June 2026, however, IRS management finally granted Mr. Flores's request for advanced sick leave. Because his medical condition requires more time away from work than initially expected, he submitted a request for more advanced sick leave on July 20. The agency automatically denied that pending request after it issued the July 24 Directive. Now, Mr. Flores will be forced to return to using unpaid FMLA leave for his treatment and recovery.

27. Because Mr. Flores has had to use leave without pay in lieu of advanced leave, he has lost income. This financial injury is ongoing as he continues to take leave for treatment and recovery because he will be unable to request advanced leave in the future. The Directive has also harmed Mr. Flores emotionally because of the stress it has caused.

28. Toniessia Williams is an IRS employee who works in Ann Arbor, Michigan. Ms. Williams is an NTEU member and has worked for the IRS for twenty years. In early July 2026, Ms. Williams submitted a request for advanced sick leave upon the recommendation of her doctors due to new, serious medical conditions. Her

managers told her that they would approve her request. Ms. Williams received an email explaining that management received the request, but she never learned whether it had been approved.

29. Because the Directive requires IRS management to deny all advanced leave requests that were pending on July 24, Ms. Williams has lost income because she had to use leave without pay in lieu of advanced leave during the last week of July. Ms. Williams will have to use either annual leave or leave without pay when she is medically unable to work in the future because of her new, serious medical conditions. The Directive has also harmed Ms. Williams emotionally because of the stress it has caused.

30. April Evans is a Tax-Examining Technician in Austin, Texas. Ms. Evans is a member of NTEU and has worked for the IRS for eighteen years. On July 24, 2026, Ms. Evans submitted a request for two weeks of advanced sick leave due to a lower body injury that prevents her from commuting to work. Ms. Evans submitted her request approximately fifteen minutes before IRS Leadership sent the nationwide email announcing the Directive.

31. Hours later, Ms. Evans received an email denying her advanced sick leave request. As a result, she will have no other option aside from taking leave without pay while she recovers from her injuries.

32. Ms. Evans loses income each time she must take leave without pay. These financial injuries will continue while she recovers from her lower body injury

because she is prevented from obtaining advance leave in the future. The Directive has also harmed Ms. Evans emotionally because of the stress it has caused.

33. In the absence of an injunction, the Directive will continue to cause financial, physical, and emotional harm to NTEU's members at the IRS.

<u>Appointments Clause</u>

34. The U.S. Constitution provides that the President:

> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const., Art. II, sec. 2, cl. 2.

35. "The Appointments Clause prescribes the exclusive process for appointing 'officers of the United States.'" *NLRB v. SW General, Inc.*, 580 U.S. 288, 311 (2017) (Thomas, J., concurring). "*All* officers of the United States are to be appointed in accordance with the Clause." *Id.* (internal citation omitted; italics in original).

36. An officer subject to the Appointments Clause is a person who (1) occupies a continuing position established by law and (2) exercise[es] significant authority pursuant to the laws of the United States. *Lucia v. SEC*, 585 U.S. 237, 245 (2018).

37. Principal officers must be appointed by the President with the advice and consent of the Senate. For inferior officers, the Appointments Clause permits

Congress to "vest" the appointment of inferior officers in the President, or courts of law, or heads of departments. U.S. Const., Art. II, sec. 2, cl. 2. The work of inferior officers "is directed and supervised at some level by others who were appointed by presidential nomination with the advice and consent of the Senate. *Edmond v. United States*, 520 U.S. 651, 663 (1997).

**The IRS Commissioner Is a Principal Officer**

38. Congress has made clear that the IRS Commissioner is a principal officer who requires Presidential nomination and Senate confirmation. The law provides: "There shall be in the Department of the Treasury a Commissioner of Internal Revenue who shall be appointed by the President, by and with the advice and consent of the Senate. Such appointment shall be made from individuals who, among other qualifications, have a demonstrated ability in management." 26 U.S.C. § 7803(a)(1)(A).

39. The Commissioner's duties include the power to "administer, manage, conduct, direct and supervise" the execution of internal revenue laws. *Id.* § 7803(a)(2)(A).

40. The Commissioner's job is to "manag[e] the organization and oversee[] all day-to-day IRS operations." IRS, Press Release: Treasury Department Announces Frank Bisignano as Chief Executive Officer of the IRS (Oct. 6, 2025), https://perma.cc/2YJ4-LPAC.

41. The IRS Commissioner's duties are continuing and permanent, not occasional or intermittent. *See Freytag v. Comm'r*, 501 U. S. 868, 881 (1991) (special

trial judges in the Tax Court held continuing office because they served on an ongoing, rather than a "temporary [or] episodic[,] basis" and their "duties, salary, and means of appointment" were specified in statute) (citing *United States v. Germaine*, 99 U. S. 508 (1879)); Officers of the United States Within the Meaning of the Appointments Clause, 31 Op. O.L.C. 73, 100 (2007) ("[A] position is most clearly 'continuing' if it is 'permanent'—that is, if it is not 'limited by time or by being of such a nature that it will terminate 'by the very fact of performance.'").

42. The IRS Commissioner exercises significant authority. *See Buckley v. Valeo*, 424 U.S. 1, 137 (1976) (FEC "functions with respect to the Commission's task of fleshing out the statute" and "functions necessary to ensure compliance with the statute and rules" are exercises of significant authority.); *Lucia*, 585 U.S. at 249 (SEC ALJs' ability to "issue decisions containing factual findings, legal conclusions, and appropriate remedies" is an exercise of significant authority, even though such decisions are not always final.).

**Frank Bisignano Is "CEO" of the IRS**

43. President Trump, in his first term, nominated and the Senate confirmed Charles P. Rettig as IRS Commissioner.

44. In his second term, President Trump nominated and the Senate confirmed Billy Long as IRS Commissioner. President Trump fired Mr. Long on August 8, 2025.

45. Since Billy Long, President Trump has not nominated anyone to serve as IRS Commissioner.

46. Secretary of Treasury Scott Bessent became Acting Commissioner of the IRS on August 8, 2025.

47. Under the Federal Vacancies Reform Act, acting officials may generally serve in a vacant, Senate-confirmed position for 210 days. The IRS announced on March 13, 2026, that "Secretary Scott Bessent's service as Acting Commissioner of the IRS under the Federal Vacancies Reform Act has expired." IRS, Update on IRS Commissioner Position, IR-2026-36 (Mar. 13, 2026), https://perma.cc/VRW4-LWUM.

48. President Trump nominated Mr. Bisignano to be the SSA Commissioner on January 28, 2025. The Senate confirmed him to that position on May 6, 2025.

49. In October 2025, Secretary Bessent, U.S. Secretary of the Treasury and then-Acting IRS Commissioner, appointed Mr. Bisignano as CEO of the Internal Revenue Service, a position that had not existed previously. *See* IRS, CEO Frank Bisignano (last reviewed Mar. 4, 2026), https://perma.cc/6DC9-ZE4E ("Frank J. Bisignano is the first Chief Executive Officer of the Internal Revenue Service[.]"); IRS, Press Release: Treasury Department Announces Frank Bisignano as Chief Executive Officer of the IRS (Oct. 6, 2025), https://perma.cc/2YJ4-LPAC (IRS CEO is a "newly created position.").

50. The IRS has stated that "Chief Executive Officer Frank J. Bisignano [is] successfully leading day-to-day operations and reporting directly to the

Secretary." IRS, Update on IRS Commissioner Position, IR-2026-36 (Mar. 13, 2026), https://perma.cc/VRW4-LWUM.

51. There is no statute creating the job of IRS "CEO." *See* Danny Nyguen, *IRS CEO Defiant as Washington Asks Who's Running Things*, politico.com (Apr. 1, 2026 4:45 am EDT), https://www.politico.com/news/2026/03/31/frank-bisignano-irs-ceo-00848020 (observing that the CEO role "doesn't exist in federal law").

52. On October 20, 2025, Secretary Bessent delegated "any function the Commissioner is authorized to perform" to the IRS Deputy Commissioner and Chief Executive Officer (CEO)." IRS, Delegation Order 1-23 (Rev. 2), Authorization to Perform Functions of the Commissioner (Oct. 20, 2025), *available at* https://perma.cc/ED3U-ERTN. There is, however, currently no Deputy Commissioner of the IRS, and there has not been one since Douglas O'Donnell, former Deputy and former Acting IRS Commissioner, retired on February 28, 2025.

53. The IRS website states that "[t]he IRS is led by the Commissioner and Chief Executive Officer who oversee the organization's operating divisions and integrated support functions." IRS, IRS organization (last reviewed Aug. 5, 2026), https://perma.cc/PC8L-NUT6.

54. The IRS's organizational chart places Mr. Bisignano at the top of the agency. IRS, Organization and Top Officials (last updated July 21, 2026), *available at* https://perma.cc/TB83-5EWN.

## The Directive Issued Under Mr. Bisignano's Authority

55. The July 24, 2026 Directive came from "IRS Leadership." On the same day, the SSA sent an identical advanced leave directive to its employees. Mr. Bisignano heads both the IRS and SSA.

56. The Directive harmed—and continues to harm—IRS employees who NTEU represents.

57. Having Mr. Bisignano carry out IRS Commissioner functions through a newly created agency head position that is not presidentially nominated or Senate confirmed violates the Appointments Clause.

58. Because Mr. Bisignano is serving as the *de facto* IRS Commissioner without having gone through the constitutionally required steps of presidential nomination and Senate confirmation, his official actions in that role are null and void. That includes his issuance of the Directive.

## Administrative Procedure Act

59. The Administrative Procedure Act (APA) "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (*Regents*) (cleaned up). The statute "requires agencies to engage in reasoned decisionmaking." *Id.* (cleaned up).

60. The APA "embodies a basic presumption of judicial review," and "instructs reviewing courts to set aside agency action that is arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A)." *Dep't of Comm. v. New York*, 588 U.S. 752, 771 (2019) (cleaned up).

### The Directive Is a Final Agency Action

61. Under the APA, a court may review a "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. To be final, an action must "(1) mark the consummation of the agency's decisionmaking process and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow." *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 620 (D.C. Cir. 2020) (cleaned up).

62. The courts have "long taken" a "'pragmatic approach" to finality. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Accordingly, a final agency action may be issued informally and the way the agency labels the action is not dispositive. *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 415 (D.C. Cir. 2020) (explaining that agency's characterization is "relevant, [but] not dispositive"); *Barrick Goldstrike Mines, Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000) (confirming that agencies cannot label their actions as "informal" to "escape judicial review under the APA"). The action is final if the agency's position is "definitive" and has a "direct and immediate effect on day-to-day business." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435–36 (1986) (cleaned up).

63. The Directive constitutes final agency action. It is the consummation of the IRS's decisionmaking and went into effect the same day that the agency

published it via email. The Directive's language is unequivocal: It states that as of July 24, 2026, the agency "will no longer accept any requests for advanced annual or sick leave" and that "[a]ll pending requests will be denied." The Directive is thus "definitive" and has a "direct and immediate effect on day-to-day business." *Ciba-Geigy Corp.*, 801 F.2d at 435–36.

**The Directive Arbitrarily and Capriciously Denies All Future and Pending Advanced Leave Requests**

64. The Directive is arbitrary and capricious because it denies all pending and future advance leave requests *en masse*, without any individualized analysis or determinations. These across-the-board denials clash with Congress's provision for agencies to grant annual leave "that will accrue to an employee at any time during the year" and its provision for advanced sick leave "[w]hen required by the exigencies of the situation." 5 U.S.C. §§ 6302(d); 6307(d). Blanket denials also conflict with OPM's instructions that "supervisors" should "use their judgment" in determining whether to grant advanced sick leave. 75 Fed. Reg. at 75368. These binding authorities contemplate an individualized, fact-specific review process for advanced sick leave requests.

65. OPM's Fact Sheet on advanced sick leave contemplates the same type of individual, fact-specific review: "Before granting advanced sick leave, it is recommended that the approving authority consider such matters as the expectation of return to duty, the need for the employee's services, and the benefits to the agency of retaining the employee." OPM, Fact Sheet: Advanced Sick Leave,

https://perma.cc/U35R-UAPF (Aug. 6, 2026); *see also* OPM, Fact Sheet: Advanced Annual Leave, https://perma.cc/78GY-YGQA (Aug. 6, 2026) (same).

66. Courts have found agency actions arbitrary and capricious in analogous scenarios. For example, the D.C. Circuit concluded that an agency's "short-winded letter" was arbitrary and capricious because it "proffered only cookie-cutter reasons" and failed to demonstrate any "individualized consideration." *Thrivent Fin. for Lutherans v. SEC*, No. 25-1047, — F.4th —, 2026 LX 309237, at *10 (D.C. Cir. July 21, 2026).

**The Directive Fails to Consider Serious Reliance Interests**

67. The Directive is arbitrary and capricious because the IRS "ignore[d]" its employees' "serious reliance interests" on its "longstanding" advanced sick leave policies. *See Regents*, 591 U.S. at 30. The IRS gave employees no notice at all, and it failed to provide an "adequate opportunity to plan in accordance with the new rule." *AFGE v. FLRA*, 2026 U.S. Dist. LEXIS 147245, *47–48 (D. Mass. June 29, 2026).

68. As explained above, employees who submitted requests for advanced sick leave before July 24 did so with the expectation that they could use that time to recover from illnesses and recuperate after surgeries while promising to repay their leave to the Agency upon accrual. Now, because of the Directive's arbitrary blanket denials, those employees will have to take unpaid time off when they have no choice but to miss work for medical reasons.

69. Ms. Evans's situation is one extreme example of this scenario. She submitted an advanced sick leave request immediately before the IRS issued the

Directive. Ms. Evans could not have predicted that the agency would summarily deny her request without any individualized assessment, and that she would be unable to take paid leave during the two weeks she was unable to commute to work.

70. Because many federal employees live paycheck-to-paycheck, they arrange their lives in accordance with the IRS's biweekly pay schedule. *See, e.g.*, Brennan Leach & Melanie Zanona, *Federal workers flock to D.C. food bank as they miss first full paycheck of shutdown*, NBC News (Oct. 24, 2025, 8:50 PM EDT), https://www.nbcnews.com/politics/politics-news/federal-workers-dc-food-bank-miss-first-full-paycheck-shutdown-rcna239698. IRS employees also rely on the availability of advanced annual and sick leave based on the policies set forth in federal statutes, OPM's regulations and guidance, and the IRM.

**The Directive Does Not Adequately Explain the Agency's Reasoning**

71. "It is well-settled that, under arbitrary and capricious review, 'the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Sec'y of Labor v. Knight Hawk Coal, LLC*, 991 F.3d 1297, 1307 (D.C. Cir. 2021) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

72. The Directive asserts, without support, that "[t]he cumulative effect over the years of [allowing advanced leave] is significant, unsustainable, and impacts our service to the public. In a number of individual cases, advanced leave is unlikely to be earned back due to the large amount of hours." It provides no

numbers or statistics—only conclusory phrases like "a number of individual cases" and "the large amount of hours."

73. Agency action is arbitrary and capricious if it "rests upon a factual premise that is unsupported by substantial evidence." *Cigar Ass'n of Am. v. FDA*, 132 F.4th 535, 540 (D.C. Cir. 2025) (cleaned up). Because the IRS has not provided any "analysis [or] data" to support its claims, the Court cannot verify that the agency "examine[d] the relevant data." *Knight Hawk Coal*, 991 F.3d at 1307. The complete lack of evidence in the Directive also makes it impossible for the IRS to articulate a "rational connection between the facts found and the choice made." *Id.*

74. The Internal Revenue Manual (IRM) requires employees who separate from agency service to pay back any unaccrued advanced leave they took during their employment. IRM 6.630.1.6.3 (Aug. 1, 2023), *available at* https://perma.cc/L3AK-64EX; IRM 6.630.5.6(5) (Aug. 26, 2025), *available at* https://perma.cc/KBA4-LT7E. This undercuts the Directive's claim that "advanced leave is unlikely to be earned back due to the large amount of hours."

75. The Directive resembles agency actions the D.C. Circuit has found arbitrary and capricious because they were produced through "drive-by procedure and conclusory reasoning." *See AFGE v. FLRA*, 24 F.4th 666, 676 (D.C. Cir. 2022). It is black letter law that "[m]ere conclusory statements will not suffice." *Thrivent Fin. for Lutherans*, 2026 LX 309237, at *11.

76. Because the Directive rests exclusively on conclusory statements and "raises more questions than answers," the IRS has not adequately explained its

reasoning. *AFGE, AFL-CIO, Local 1929 v. FLRA*, 961 F.3d 452, 457 (D.C. Cir. 2020).

### The Directive Fails to Explain the Agency's Departure from Its Previous Policies and Practices

77. The Directive's conclusory justifications fail to adequately explain the agency's departure from its previous advanced sick leave policy. "[A]n agency acts arbitrarily and capriciously when it abruptly departs from a position it previously held without satisfactorily explaining its reason for doing so." *Wis. Valley Improvement Co. v. FERC*, 236 F.3d 738, 748 (D.C. Cir. 2001).

78. For all the reasons listed above, the Directive does not adequately explain the agency's reasoning. It thus follows that the agency also failed to "satisfactorily explain[]" its abrupt about-face from its longstanding advanced sick leave policies. *Id.* The Directive is arbitrary and capricious on this ground too.

### The Directive Is Irreconcilable with Other Agency Policies

79. The IRM provides for advanced leave and instructs supervisors to "carefully evaluat[e]" all advanced leave requests "on a case-by-case basis." IRM 6.630.1.6.1(4); 6.630.1.6.2; 6.630.1.6.2(18) (Aug. 1, 2023), *available at* https://perma.cc/L3AK-64EX. The Directive's blanket denial of all pending and future advanced leave requests is at odds with these IRM instructions.

80. The IRM also requires management to approve "advanced annual and/or advanced sick leave" requests "to the extent permitted by law for purposes relating to childbirth, adoption, and foster care" as long as there are no "unusual or extenuating circumstances." *Id.* at 6.630.5.6(1). The Directive's blanket denial is

irreconcilable with this IRM requirement to grant advanced leave requests for purposes relating to childbirth, adoption, and foster care unless there are unusual circumstances.

81. The Directive is arbitrary and capricious because the agency is "maintain[ing] two irreconcilable policies." *Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925, 935 (D.C. Cir. 2008).

## CAUSES OF ACTION

**<u>Count 1:</u> Defendant Bisignano was not lawfully appointed and his actions as IRS CEO, including the Directive, are ultra vires.**

82. The paragraphs above are incorporated and reasserted as if fully set forth herein.

83. The creation of a new CEO position to lead the IRS without any temporal or other limitation—and without presidential nomination or Senate confirmation—is a violation of the Constitution's Appointments Clause.

84. Defendant Bisignano's actions as IRS CEO, including the Directive, are therefore invalid and should be set aside as ultra vires.

**<u>Count 2:</u> The Directive's blanket denial of all pending advanced sick and annual leave requests is arbitrary and capricious in violation of the APA.**

85. The paragraphs above are incorporated and reasserted as if fully set forth herein.

86. Under the APA, a reviewing court must set aside agency actions that are "arbitrary [and] capricious." 5 U.S.C. § 706(2)(A).

87. The Directive is a final agency action within the meaning of 5 U.S.C. § 704.

88. The Directive is arbitrary and capricious on each of the following grounds:

a. It denies all pending advanced leave requests across the board, with no individualized assessments;

b. It ignores agency employees' serious reliance interests;

c. The IRS did not adequately explain its reasoning;

d. The IRS did not adequately explain its abrupt departure from its previous policies and practices; and

e. The IRS now maintains at least two irreconcilable policies as to advanced leave.

**<u>Count 3:</u> The Directive's blanket denial of any future advanced sick or annual leave requests is arbitrary and capricious in violation of the APA.**

89. The paragraphs above are incorporated and reasserted as if fully set forth herein.

90. Under the APA, a reviewing court must set aside agency actions that are "arbitrary [and] capricious." 5 U.S.C. § 706(2)(A).

91. The Directive is a final agency action within the meaning of 5 U.S.C. § 704.

92. The Directive is arbitrary and capricious on each of the following grounds:

a. It denies all future advanced leave requests across the board, with no individualized assessments;

b. It ignores agency employees' serious reliance interests;

c. The IRS did not adequately explain its reasoning;

d. The IRS did not adequately explain its abrupt departure from its previous policies and practices; and

e. The IRS now maintains at least two irreconcilable policies as to advanced leave.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff NTEU respectfully requests judgment against Defendants:

A. Declaring that the Directive is ultra vires because it was issued under the authority of Mr. Bisignano who was not appointed consistent with the Constitution's Appointments Clause;

B. Enjoining the Directive as ultra vires because it was issued under the authority of Mr. Bisignano who was not appointed consistent with the Constitution's Appointments Clause;

C. Declaring that the IRS Directive is arbitrary and capricious under the APA;

D. Enjoining the IRS from implementing the Directive because it is arbitrary and capricious under the APA;

E. Ordering the IRS to rescind the Directive and any related guidance;

F. Awarding Plaintiff reasonable attorney fees and costs incurred; and

G. Ordering such further relief as the Court may deem just and appropriate.

Respectfully submitted,

*/s/ Paras N. Shah*
PARAS N. SHAH
General Counsel
D.C. Bar 983881

*/s/ Allison C. Giles*
ALLISON C. GILES
Associate General Counsel
D.C. Bar 439705

*/s/ Kathryn W. Bailey*
KATHRYN W. BAILEY
Assistant Counsel
D.C. Bar 1643256

*/s/ Noah Brozinsky*
NOAH BROZINSKY
Assistant Counsel
D.C. Bar 1655789

NATIONAL TREASURY EMPLOYEES UNION
800 K Street N.W., Suite 1000
Washington, D.C. 20001
(202) 572-5500
paras.shah@nteu.org
allie.giles@nteu.org
kathryn.bailey@nteu.org
noah.brozinsky@nteu.org

August 20, 2026 Counsel for Plaintiff NTEU